FILED
2016 Jan-15  PM 04:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| TODD JARED BUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:14-cv-02467-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

The plaintiff, Todd Jared Bush, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and setting his onset date of disability as June 1, 2012.[1]   Mr. Bush timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).   The parties have consented to magistrate judge jurisdiction.  (Doc. 12).

---

[1]   The plaintiff filed an application for DIB as well as supplemental security income ("SSI"), alleging disability beginning on October 13, 2009.

Mr. Bush was forty years old at the time of the Administrative Law Judge's ("ALJ") decision, and he has a high school education and training as a machinist. (Tr. at 18). His past work experiences include employment as a machinist. (*Id.*) Mr. Bush claims that he became disabled on October 13, 2009, due to lower back pain, foot problems, neck pain, carpal tunnel syndrome, hernia surgery, and enlarged prostate. (Tr. at 11, 199).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step

three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id*. If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id*. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id*. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id*. The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can

perform; and, once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Bush meets the nondisability requirements for a period of disability and DIB and was insured through December 31, 2011. (Tr. at 11). However, the ALJ determined that the plaintiff was not disabled prior to June 1, 2012, and, accordingly, was not entitled to DIB benefits because his insured status expired prior to that date of disability. (*Id.*) He determined that Mr. Bush has not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. at 13). According to the ALJ, the plaintiff has the severe impairments of carpal tunnel syndrome after a bilateral carpal tunnel surgery, right shoulder surgery, low back pain, and exogenous obesity, since his alleged disability onset of October 13, 2009. (*Id.*) The ALJ determined that, since June 1, 2012, the established onset date of disability, the plaintiff has had the severe impairments of degenerative disc disease of the lumbar and cervical spine, chronic low back pain with radicular pain to the right leg consistent with a herniated nucleus pulposus, status post right shoulder surgery, carpal tunnel syndrome after a carpal tunnel release with residual paresthesias after surgery, and obesity. (*Id.*)

4

The ALJ found that, between the alleged onset date of disability and the established onset date of disability, "the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (Tr. at 14). He determined that prior to the established onset date of disability, the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" and that the plaintiff had the RFC to "perform the full range of sedentary work as defined in §§ 20 CFR 404.1567(a) and 416.967(a)."  (Tr. at 14, 15).  Beginning June 1, 2012, however, the ALJ determined that the plaintiff's testimony regarding the limiting effects of his impairments was generally credible, and the plaintiff no longer could perform even sedentary work. (Tr. at 17).

According to the ALJ, Mr. Bush has been unable to perform any of his past relevant work since June 1, 2012.  (Tr. at 18).  At the time of the ALJ's decision, the claimant was a "younger individual" with at least a high school education, as those terms are defined by the regulations.  (*Id*.)  The ALJ determined that, prior to June 1, 2012, transferability of skills was not an issue in the plaintiff's case, and "[b]eginning on June 1, 2012, the claimant has not been able to transfer job skills to other occupations."  (*Id*.)  Prior to June 1, 2012, the plaintiff had the RFC to

perform the full range of sedentary work and, therefore, significant jobs existed in the state and national economy that the plaintiff could perform. However, the ALJ found that "[b]eginning on June 1, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. at 19). The ALJ ultimately found that "[t]he claimant was not disabled prior to June 1, 2012, but became disabled on that date and has continued to be disabled through the date of this decision." (*Id.*) Accordingly, the ALJ decided that the plaintiff was eligible for SSI benefits beginning on June 1, 2012, but, because the plaintiff was not disabled prior to December 31, 2011 (the plaintiff's date last insured), he was not eligible for DIB benefits.

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.

*See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead,

opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.  Discussion

The plaintiff contends that the ALJ's determination that he did not become disabled until June 1, 2012, is not based on substantial evidence. In support of this argument, the plaintiff makes three points. First, he claims that the medical evidence prior to June 1, 2012, supports the conclusion that the plaintiff had only a limited ability to feel and finger with the bilateral upper extremities. Second, the plaintiff asserts that the opinion evidence of Dr. Woodfin, a consulting physician, does not support the ALJ's determinations. Third, the plaintiff argues that the

activities of daily living attested to by the plaintiff prior to June 1, 2012, is not inconsistent with the inability to perform work.

## A. Medical Evidence of Record

The plaintiff first argues that the plaintiff's medical records prior to June 1, 2012 support a determination of disability.  Primarily, the plaintiff focuses on Dr. Philip A. Maddox's treatment of the plaintiff's carpal tunnel syndrome.  The plaintiff argues that, because he suffered from bilateral hand pain and limitations of mobility and grip strength when treated by Maddox between October 2011 and January 2012, he could not meet the requirements for performing sedentary work. He explains that the ALJ acknowledged such bilateral hand limitations when determining that the plaintiff was disabled after June 1, 2012, and argues that, had the ALJ acknowledged that the plaintiff suffered from the same limitations in 2011, he would have determined that no work existed in the state or national economy that the plaintiff could perform at that time.

The plaintiff self-referred to Dr. Maddox at the Orthopaedic Center on October 25, 2011, complaining of bilateral hand pain.  (Tr. at 361).  In addition to pain, the plaintiff noted loss of mobility and grip strength as well as stinging and numbness in both hands.  (*Id*.)  The plaintiff stated that his symptoms had been ongoing for roughly five years but had progressively increased.  (*Id*.)  Dr. Maddox

noted that the plaintiff had a full range of motion ("ROM") and pain over his right elbow. (*Id.*) Dr. Maddox's impression was that the plaintiff suffered from bilateral carpal tunnel syndrome ("CTS") and tennis elbow of the right elbow. (Tr. at 362). He ordered an electromyogram ("EMG") and nerve conduction studies for the plaintiff's hands, and injected the plaintiff's elbow with Depo-Medrol and Lidocaine. (*Id.*) The plaintiff had x-rays of the right shoulder on his return visit on November 8, 2011. (Tr. at 364). The x-rays showed "some osteoarthritis at the acromioclavicular joint." (*Id.*) Dr. Maddox noted that the plaintiff's EMG and nerve conduction velocity studies were consistent with bilateral CTS. (Tr. at 359). Dr. Maddox planned to do two carpal tunnel release surgeries on the plaintiff, beginning with his right hand. (*Id.*) He also planned to do a right shoulder arthroscopy with debridement, subacromial decompression, and distal clavicle resection. (*Id.*) The plaintiff's surgery was scheduled for November 28, 2011. (*Id.*)

After undergoing surgery, the plaintiff saw Dr. Woodfin on December 19, 2011, regarding problems with his right shoulder and back. (Tr. at 366). Dr. Woodfin noted the patient's November 28, 2011, surgery, and further noted that the plaintiff's ROM was the only physical limitation the plaintiff experienced with regard to his right shoulder. (*Id.*) The plaintiff alleged low back pain starting after

a motor vehicle accident in 1997.  He previously had epidurals in his back to address the pain.  The plaintiff told Dr. Woodfin that he could not lift or carry more than 15 pounds, and could only do limited stooping or kneeling.  (*Id.*)  He could not squat and was limited in his ability to twist or bend.  (*Id.*)  Dr. Woodfin opined that the plaintiff "should be able to lift and carry 10 to 15 lbs. occasionally and sit, be on his feet, and walk frequently."  (Tr. at 368).  He surmised that the plaintiff should "get along fairly well" if he avoided frequent bending and heavy lifting.  (*Id.*)  Due to the plaintiff's recent surgeries on his hands and right shoulder, Dr. Woodfin noted that he had "no idea what [the plaintiff's] physical status regarding the hands or right shoulder might be 6 months from now."  (*Id.*)

The plaintiff argues that the ALJ's determination that the plaintiff was not disabled prior to his date last insured hinges on the problems the plaintiff experienced with his hands.  Specifically, he argues that "[t]he records support that prior to December 31, 2011, the date Mr. Bush's entitlement for the receipt of benefits under Sections 216(i) and 223(d) of the Social Security Act expired, Mr. Bush was experiencing the level of limitations in his ability to finger and feel with his bilateral upper extremities that when credited by the ALJ, as beginning as of June 1, 2012, where [sic] significant to prevent the ability to perform even

sedentary exertion level work." (Doc. 15, p. 9). With regard to the plaintiff's limitations prior to June 1, 2012, the ALJ determined that,

> [t]he objective medical evidence is fully consistent with the above residual functional capacity and is inconsistent with allegations of disabling levels of pain and numbness. MRI evidence shows rotator cuff tendonosis but no tear. He had no point tenderness with full range of motion in both shoulders upon internal and external rotation with no trigger points. Following carpal tunnel release, he had some complaints of numbness and tingling in his hands. However, in follow up he was noted to be improved. Additionally, he had 5/5 motor strength and manual dexterity was normal. There is no evidence of motor loss or atrophy.

(Tr. at 16).

By contrast, the ALJ noted the plaintiff's consultation with Dr. Crouch, a consultative medical examiner, in August 2012. The ALJ noted that Dr. Crouch,

> Found positive straight leg raising on the right with a noted limp on the right when walking. An x-ray of the lumbar spine shows degenerative changes throughout the lumbar spine with moderate anterior lipping due to osteophyte formation. X-ray of the cervical spine shows severe degenerative changes with prominent narrowing of C4-5, C5-6 as well as C6-7. There is diminished range of motion of the lumbar and cervical spine and shoulder upon range of motion testing. Dr. Crouch diagnosed chronic low back pain with radicular pain to the right leg consistent with herniated nucleus pulposus, degenerative disc disease of the lumbar and cervical spine, chronic paresthesias of the hands due to bilateral carpal tunnel syndrome status post surgery, and chronic right shoulder pain status post

> surgical resection of the distal right clavicle.  The claimant stated that
> he drops things easily due to numbness of the fingertips of both hands.
> He stated that he is unable to lift any weight above shoulder level, and
> has numbness and burning in his feet when standing  (Exhibit 19F).

(Tr. at 17).

Based on the medical evidence of record, as well as the ALJ's decision, it appears to the court that the plaintiff's impairments due to his CTS were not the only factor used by the ALJ to determine that the plaintiff became disabled on June 1, 2012, but not before.  The plaintiff's impairments appear to have worsened in every respect between the time he saw Dr. Woodfin and his consultation with Dr. Crouch.  Accordingly, the plaintiff's argument that, had the ALJ only taken into consideration the plaintiff's CTS and the resulting problems, he would have found the plaintiff disabled prior to his date last insured, does not stand.

## B. Dr. Woodfin's Opinion Evidence

The plaintiff further argues that the opinion evidence offered by Dr. Woodfin does not support the ALJ's determination that the plaintiff could perform the full range of sedentary work prior to June 1, 2012.  The Act defines sedentary work as that which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount

of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567.  The plaintiff argues that "Dr. Woodfin makes no opinion as to limitations in the claimant's ability to use his hands to finger or feel and does not note that the claimant can perform lifting or carrying on a frequent basis, [so] Dr. Woodfin's opinion is not consistent with the ability to perform the full range of sedentary work."  (Doc. 15, p. 10).  He further argues that "Dr. Woodfin's limiting the claimant to less than frequent bending would place an additional limitation that would further reduce the ability to perform sedentary work."  (*Id.*)

Sedentary work, however, is not defined as work that requires "frequent" lifting and carrying or bending.  20 C.F.R. § 404.1567(a).  Accordingly, Dr. Woodfin's opinion that the plaintiff should lift 10 to 15 pounds only occasionally and avoid frequent bending and heavy lifting is in line with the Act's description of the requirements of sedentary work.  The plaintiff also argues, however, that Dr. Woodfin's statement that he had "no idea" what the status of the plaintiff's hands and right shoulder may be in the future indicates a failure to state an opinion on the plaintiff's ability to use his hands to finger or feel.  (Doc. 15, p. 10).  According to the plaintiff, this "lack of opinion" by Dr. Woodfin means that the ALJ's

determination is not based on substantial evidence.  In addition to Dr. Woodfin's opinion, to which the ALJ gave great weight, the ALJ also cited the plaintiff's follow-up appointment with Dr. Maddox, after his carpal tunnel release surgery. (Tr. at 15, 16).  Dr. Maddox noted that the plaintiff reported "tingling and numbness in his fingers."  (Tr. at 370).  However, the plaintiff did not report that the symptoms hindered him severely in activities of daily living, whereas, he later reported to Dr. Crouch that "he tends to drop things easily and has trouble feeling and manipulating small objects."  (Tr. at 401).   The ALJ relied, not only on Dr. Woodfin's assessment of the plaintiff's abilities, but also on the medical records from the plaintiff's surgeon, Dr. Maddox.  Although the plaintiff contends that the ALJ should have interpreted Dr. Woodfin's opinion differently, it is not within the purview of the court to reweigh evidence.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The medical evidence substantially supports the conclusion of the ALJ that the plaintiff could perform sedentary work, notwithstanding the tingling and numbness in his fingers

## C. Activities of Daily Living

Finally, the plaintiff argues that, contrary to the ALJ's findings, the plaintiff's activities of daily living are not inconsistent with the inability to perform sustained work activities.  (Doc. 15, p. 11).  Although the ALJ found the claimant's

allegations regarding his symptoms to be generally credible beginning on June 1, 2012, he found that prior to June 1, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 15, 17). One reason the ALJ listed for determining that the plaintiff's allegations of the limiting effects of his symptoms were not entirely credible were the plaintiff's activities of daily living. Regarding the plaintiff's activities of daily living, the ALJ stated as follows:

> The claimant's activities of daily living are fully consistent with the above residual functional capacity assessment and are inconsistent with disabling levels of pain and symptoms he alleges preclude him from working. For example, he prepares his meals, washes dishes, feeds the dog, does light housekeeping including sweeping, assists his parents with day to day things, watches television, reads the newspaper, and cares for his personal needs independently. This evidence clearly supports the claimant having the ability to engage in the range of work described above.

(Tr. at 16).

The plaintiff correctly notes that "participation in everyday activities of short duration, such as housework or fishing does not disqualify a claimant from disability." *Lewis v. Callahan*, 125 F.3d 1346, 1441 (11th Cir. 1997). However, the plaintiff mischaracterizes the ALJ's use of daily activity evidence. The ALJ does not use evidence of the plaintiff's activities of daily living, on its own, to determine

that the plaintiff was capable of doing sedentary work prior to June 1, 2012.  He does, however, reference various activities Mr. Bush participated in to illustrate that the plaintiff's subjective pain testimony was not credible for the time period before the established onset of disability.  The ALJ also considered the medical evidence in the record to make his credibility determination, comparing Dr. Woodfin's observations with those of Dr. Crouch after June 1, 2012.  It is the ALJ's responsibility to consider the plaintiff's subjective testimony and determine its credibility.  *See* Soc. Sec. Ruling 96-7p, 1996 WL 374186 (1996).  Thus, the ALJ justifiably determined that the plaintiff's subjective pain testimony was not credible when compared to the medical evidence in the record for the relevant time period. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

## IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Bush's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

DONE this 15th day of January, 2016.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE